UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RFK RETAIL HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>EASTERN REAL ESTATE LLC,<br><br>    Defendant. | 2:15-cv-01446-RCJ-CWH<br><br>**ORDER** |

This case arises from the alleged interference with a brokerage agreement between Plaintiff RKF Retail Holdings, LLC and Tropicana Las Vegas, Inc., a nonparty to the suit. Pending before the Court is Defendant Eastern Real Estate, LLC's Motion for Judgment on the Pleadings (ECF No. 10). For the reasons given herein, the Court grants the motion in part and denies the motion in part.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiff RKF Retail Holdings, LLC ("RKF") and Tropicana Las Vegas, Inc. ("Tropicana"), a nonparty to the suit, entered an Exclusive Agency Agreement ("the Agreement") for RFK to act as broker to lease to tenants a 30,000 square foot lot of undeveloped space owned by Tropicana at the intersection of Tropicana and Las Vegas Boulevard in Las Vegas, NV ("the Premises"). (Compl. ¶ 5, ECF No. 1; Agreement § 1, ECF No. 10, at 14). The

one-year Agreement began on September 15, 2012 and was to continue on a month-to-month basis until either party terminated it by giving thirty-days written notice. (Compl. ¶ 6; Agreement § 1). If Tropicana determined "in [its] sole and absolute discretion, to cease its efforts in designing and developing the Premises," then it could also terminate the Agreement immediately upon written notice to Plaintiff. (Compl. ¶ 8; Agreement § 1). However, if Tropicana decided to reinitiate the project within six months after ceasing its efforts, then the Agreement would automatically be reinstated for six months. (*Id.*). The Agreement required Plaintiff to submit to Tropicana a list of prospective tenants at the expiration or termination of the Agreement. (Compl. ¶ 9; Agreement § 18). Tropicana would then pay Plaintiff a commission for any transaction into which Tropicana entered with any tenant on the list, if the transaction occurred within six months of the termination of the Agreement or by the time good faith negotiations with the prospective tenant had ended. (*Id.*).

Following the execution of the Agreement, Plaintiff immediately began to market the space to potential tenants, and by March 2014 it had negotiated, issued, or executed letters of intent to lease with about one hundred prospective tenants. (Compl. ¶ 10). According to Plaintiff, "Tropicana made representations to RKF concerning its intentions to move immediately forward with development and execute leases with prospective tenants that RKF procured for the Premises." (*Id.* ¶ 11). However, "Tropicana had no intention of immediate development of the Premises and did not take reasonable steps to begin development of the Premises in earnest." (*Id.* ¶ 12).

In January 2014, Defendant and Tropicana began exploring a potential partnership in developing the Premises and in February 2014 created a summary of terms for a joint venture. (*Id.* ¶¶ 13–14). Plaintiff alleges that Defendant wanted to redirect the commissions due to

Plaintiff and, thus, "advised and induced Tropicana to terminate the Agreement, end its relationship with RKF and refuse to pay RKF any commissions, in breach of the Agreement." (*Id.* ¶ 16–17). According to Plaintiff, Defendant was aware of the Agreement and analyzed it in inducing Tropicana to breach it. (*Id.* ¶ 19). Further, Defendant's general counsel wrote to Tropicana's counsel on April 9, 2014, "We are in a bit of an awkward position since . . . we don't want to be added into any litigation or be named as a party under a claim of interference etc." (*Id.*; E-mail to Joanne Beckett, 13, ECF No. 28). Plaintiff alleges that before convincing Tropicana to write a termination letter to Plaintiff, Defendant communicated to Tropicana that "[t]he problem with the termination is the survival of the obligation to pay RKF even after we hire another broker." (Compl. ¶ 20).

On March 26, 2014, shortly after Defendant's advice to Tropicana, Tropicana sent Plaintiff a letter terminating the Agreement and repudiating Tropicana's obligation to pay Plaintiff commissions. (*Id.* ¶¶ 21–22). On July 28, 2014, Plaintiff filed a separate complaint against Tropicana making various claims regarding the Agreement. (*See* Compl., ECF No. 1 in *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, 2:14-cv-01232-APG-GWF (D. Nev. 2014)). Plaintiff filed this suit on July 29, 2015. Plaintiff makes three claims against Defendant RKF in this case: (1) tortious interference with contractual relations; (2) tortious interference with prospective business relations; and (3) aiding and abetting a breach of fiduciary duty. Defendant has moved for judgment on the pleadings.

II.     **LEGAL STANDARDS**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards governing a Rule 12(c) motion are the same as those governing a Rule 12(b)(6) motion. *See Dworkin v. Hustler*

*Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference . . . is the time of filing. . . . [T]he motions are functionally identical . . . .").

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also

must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III.   ANALYSIS

#### A.   Tortious Interference with Contractual Relations

Defendant makes two primary arguments for dismissal of Plaintiff's claim of tortious interference with contractual relations: first, Plaintiff cannot prove causation, and, second, Plaintiff cannot prove any damages.

///

///

### 1. Causation

Defendant argues Plaintiff cannot show Defendant caused Tropicana to breach the Agreement. "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett,* 119 Nev. 269, 71 P.3d 1264, 1267 (Nev. 2003) (footnote omitted).

Plaintiff alleges that Defendant had knowledge of the Agreement and was familiar with its terms. (Compl. ¶ 26). It alleges that Defendant asked Tropicana to terminate the Agreement, "falsely claim a breach by RKF, and repudiate the obligation to pay commissions." (*Id.* ¶ 27). Plaintiff also alleges that Defendant provided Tropicana analysis regarding the termination provisions in the Agreement "with the intent to harm RFK by disrupting the Agreement." (*Id*). Further, Tropicana terminated the Agreement in response to Defendant's request. (*Id.* ¶ 28). These allegations clearly set forth facts making it plausible that Defendant committed intentional acts intended or designed to disrupt the Agreement between Plaintiff and Tropicana, and that Defendant actually disrupted the Agreement.

Defendant argues that because Plaintiff claims that "Tropicana had no intention of immediate development of the Premises and did not take reasonable steps to begin development of the Premises in earnest," "Eastern cannot have interfered with a contract that the breaching party decided at the outset it would not perform." (Mot., 6). Defendant cites a similar allegation in Plaintiff's complaint against Tropicana as well as the allegation that "Tropicana did not inform RFK of its decision not to proceed with timely development of the Premises, but fraudulently

concealed this fact." (*See* Compl. ¶¶ 21, 36 in *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, 2:14-cv-01232-APG-GWF (D. Nev. 2014)).

Defendant's argument is misplaced. With this claim, Plaintiff does not allege that Defendant interfered with the fulfillment of the Agreement by causing Tropicana to delay development of the Premises. Plaintiff alleges that Defendant disrupted the Agreement by asking Tropicana to terminate it and deny its obligation to pay commissions to Plaintiff. Thus, Defendant could potentially be liable for any interference it caused up until the time Tropicana actually terminated the Agreement. Even if Plaintiff's allegation that Tropicana did not intend to develop the Premises immediately is true, discovery could show that Tropicana later determined to develop the Premises and pay commissions to Plaintiff and that Defendant convinced Tropicana to do otherwise. The Court finds nothing in the Agreement requiring Tropicana to begin development immediately, and nothing in the pleadings conclusively shows Tropicana never had any intention of eventually honoring the Agreement. Plaintiff has alleged that Defendant disrupted the Agreement by asking Tropicana to terminate it and refuse to pay commissions to Plaintiff. It is plausible that Defendant took action intended to disrupt the ongoing Agreement, which was still in force when Defendant became involved, and that Defendant actually did disrupt the Agreement, even if Tropicana did not intend to develop the Premises immediately after entering the Agreement.

**2.    Damages**

Defendant argues the Court should dismiss the claim because the damages alleged are too speculative. Plaintiff alleges that "[a]s a result of Eastern RE's interference with the Agreement, Plaintiff has suffered damages in excess of several millions of dollars, the specific amount of

which will be proven at trial." (Compl. ¶ 29). Plaintiff's allegation of damages is sufficient at this stage of the case.

The damages Plaintiff has alleged are uncertain at this stage but not speculative. According to the Agreement, Plaintiff would receive commissions for any "transaction" into which Tropicana entered with any prospective tenant Plaintiff provided. (Agreement, § 18). Plaintiff was to provide a list of prospective tenants that had taken specific steps toward entering a lease agreement, including those who had "submitted . . . [a] bona fide letter of intent." (*Id.*). Plaintiff claims that at the time Tropicana terminated the Agreement, Plaintiff had "secured close to one hundred Letters of Intent with prospective tenants." (Compl. ¶ 22). Whether the letters of intent Plaintiff secured would qualify as a "transaction" requiring Tropicana to pay Plaintiff commissions is open for debate, but the facts show Plaintiff's claim of damages is not speculative.

Damages are a question of fact subject to proof and need not be proven in a complaint. (*See NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) ("However difficult it might be to prove damages at trial, ultimately this is a question of fact subject to proof, and is inappropriate to support this motion to dismiss."), *rev'd in part* on other grounds). Further, as Plaintiff argues, damages for intentional interference with contractual relations are not limited to actual damages from the breach of contract; they can include "damages for the pecuniary loss of the benefits of the contract; damages for actual harm to reputation, if they are reasonably to be expected to result from the interference; and consequential losses for which the interference is a legal cause." *Nat'l Right To Life Political Action Comm. v. Friends of Bryan*, 741 F. Supp. 807, 812 (D. Nev. 1990). Plaintiff should have an opportunity to prove damages at trial.

The Court will not dismiss the claim of tortious interference with contractual relations.

### B. Tortious Interference with Prospective Business Relations

Defendant also argues the Court should dismiss Plaintiff's claim of tortious interference with prospective business relations because Plaintiff "has identified no 'prospective' business relations other than with Tropicana." (Mot., 9). The Court agrees.

The tort of intentional interference with prospective economic advantage requires proof of:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987). Plaintiff's only allegation is that "Tropicana and RKF entered into the Agreement for RKF to act as broker to lease the Premises, and had an ongoing and prospective business relationship for RKF to continue in that role." (Compl. ¶ 31). This claim fails because Plaintiff does not allege any prospective contractual relationship between it and any third party—it claims only frustration of an existing contract, i.e. the Agreement. Plaintiff has not alleged that it has any prospect of a future contract between it and Tropicana, the potential lessees involved in the Agreement, or anyone else. The Court rejects Plaintiff's attempt to characterize prospective performance under an existing contract as "prospective economic advantage." Interference with prospective *performance under an existing contractual relationship* and interference with the prospective *creation of a*

*contractual relationship* are distinct torts, and it is the former that is implicated in this case. The Court dismisses the claim, with leave to amend.

### C. Aiding and Abetting a Breach of Fiduciary Duty

Defendant moves the Court to dismiss this claim because the timeline of events alleged makes Defendant's complicity in the breach of fiduciary duty impossible. Four elements are required to make a claim of aiding and abetting the breach of a fiduciary duty: "(1) there must be a fiduciary relationship between two parties, (2) that the fiduciary breached, (3) the defendant third party knowingly and substantially participated in or encouraged that breach, and (4) the plaintiff suffered damage as a result of the breach." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014).

Plaintiff sufficiently pleaded a claim of aiding and abetting a breach of fiduciary duty. First, Plaintiff claims Tropicana had a fiduciary relationship with it by virtue of their principal-agent relationship. (Compl. ¶ 37). Second, Plaintiff claims Tropicana breached its fiduciary duty of disclosure. (*Id.* ¶¶ 37, 40). Third, Plaintiff claims Defendant was aware of Tropicana's duty and its efforts regarding the Agreement, and that Defendant "assisted and induced Tropicana in breaching its duty." (*Id.* ¶ 40). Fourth, Plaintiff alleges it "has suffered damages in excess of several millions of dollars." (*Id.* ¶ 41).

Defendant argues the facts as alleged make its involvement in the breach impossible because "[a]ll of these alleged omissions would have occurred long before Eastern became involved in the project in January 2014." (Mot., 9). The Court disagrees. Plaintiff claims that Tropicana had "an affirmative duty of disclosure to RKF regarding circumstances that would eviscerate the benefits of the Agreement for RKF." (Compl. ¶ 37). It claims that Tropicana failed to disclose "its intention not to develop the Premises on the original timeline and its decision to

pursue other partnerships for development in the future." (*Id.* ¶ 39). Although Tropicana's original intention not to develop the Premises as planned might have been evident before Defendant's involvement, Tropicana's intentions regarding development were subject to change, and its desire to pursue other partnerships was not evident until the time Plaintiff claims Defendant frustrated the Agreement. Plaintiff has properly pleaded the elements of aiding and abetting a breach of fiduciary duty and, thus, deserves an opportunity to prove its claim. The Court will not dismiss the claim.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED IN PART and DENIED IN PART. The claim of tortious interference with prospective business relations is dismissed, with leave to amend.

IT IS SO ORDERED.

Dated this 18th day of February, 2016.

_____
ROBERT C. JONES
United States District Judge